The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oh yay, oh yay, oh yay. All persons having any amount of form of business for the Honorable, the Judges of the United States Court of Appeals, are admonished to give their attention, for the Court is now sitting. Godspeed, United States, and this Honorable Court. Good morning, everybody. Welcome to the Fourth Circuit. We have four cases on the docket this morning. The first case is Carleton & Harris Chiropractic, Inc. v. PDR Network. And Mr. Harrell will be glad to hear from you. Thank you. May it please the Court. My name is Glenn Herra on behalf of the appellant, Carleton & Harris Chiropractic. Can the Court hear me all right? I can hear you. Great. Thank you. I'd like to focus on two issues today. The first is the important waiver slash forfeiture issue that the Court raised in its briefing order, issue number seven. And the second is why the FCC's 2006 interpretation that a fax offering free goods or services as an advertisement is a reasonable one, and why the District Court erred in dismissing our case. On waiver and forfeiture, PDR admits that it did not raise issues two through five in the District Court or in this Court in the first appeal. That encompasses the legislative versus interpretative distinction, the Administrative Procedures Act, the due process arguments, and the separation of powers argument. As the Court anticipated in its briefing order, those issues are forfeited. PDR has never explained why it couldn't have raised those issues the first time around, and it clearly could have. Those arguments have been made in other cases. Under this Court's precedence, primarily omni-advertising, the Court held that where an argument could have been raised in an initial appeal, it is inappropriate to consider that argument on a second appeal following remand from the Supreme Court, even when the first decision is vacated. Mr. Harra, refresh my recollection. Did this issue of waiver or forfeiture come up during the Supreme Court arguments? Yes, I argued that the appeal should be dismissed as improvidently granted, but the Court didn't rule on that one way or another. When it remanded, notably the Supreme Court said this Court could decide any other issues that may arise during the course of this appeal. One of the issues that has arisen in the course of this appeal is whether all these arguments are forfeited. We say, importantly, they're not just forfeited. PDR didn't just fail to raise these arguments. They affirmatively weighed any challenge to the validity of the FCC rule in the first appeal. In the District Court, in the reply in support of the motion to dismiss, at pages 80 to 81 of the joint appendix, PDR expressly disclaimed that it was making any challenge to the validity of the rule. It conceded that that would violate the Hobbs Act. In a different world, I'd perhaps be a little bit more confident about the forfeiture and waiver issue, but having been reversed already once by the Supreme Court, my sense is that it would be a bit odd to effectively thumb our nose at the Supreme Court's direction that we consider, at least by implication and suggestion, that we consider these issues on the merits, notwithstanding the question of forfeiture and waiver. Judge Diaz, I understand that. If you read it closely, though, the Supreme Court didn't reverse this court on the merits. What it said was, we can't decide the question presented without answers to these two preliminary questions. So we just can't reach a decision. And they vacated and remanded on those two questions and any other issue that may arise during the course of the appeal. Mr. Harrell, let me ask you this. From your point of view, I suppose, if we were to decide those issues on the merits, you have arguments, obviously, on the merits. So why don't you get to that and let's talk about that. Sure. So this court held. So if the court holds that the issues aren't waived or forfeited, then the question is, what level of deference do you give to the FCC interpretation? And we already litigated that question in the first appeal, whether the rule is reasonable or not. The court concluded that the FCC's interpretation was a reasonable one. But in the first appeal, did you concede that it was an interpretive rule that didn't have the force and effect of law? No, the issue was never raised in the first appeal. OK, but now you concede, don't you, that it's an interpretive rule or do you not? It is an interpretive rule, yes. OK, so does an interpretive rule have the force and effect of law? It is subject to either Chevron deference or Skidmore deference, depending on what level, what standard the court applies. We say Chevron deference. And what support is there for Chevron deference being applied to an interpretive rule? I would cite the Circuit Court of Appeals decisions that have reviewed FCC interpretations in Hobbs Act appeals, like the D.C. Circus decision in ACA International, 885, Fed 3rd, 687. It applied Chevron deference to determining whether the FCC's interpretation of the term automatic telephone dialing system was reasonable or not. Do you have any Fourth Circuit cases? I don't believe I do have a Fourth Circuit case involving an interpretive rule by the FCC. I just want to make sure I understand your argument. So you agree that this is an interpretive rule. And so do you agree that because it's an interpretive rule, the Hobbs Act sort of applies differently and doesn't bind a district court to that interpretation? Or do you think that even though it's an interpretive rule, it's still fully covered by the Hobbs Act like any other rule? Your Honor, we made the latter argument in our opening brief. Then the government took the position in its amicus that this is a non-binding interpretive rule. And so we were faced with the choice. Are we going to argue that the district court is required to follow something that is non-binding? And we decided in our reply brief that we weren't going to do that. We were going to stick right to the show right. Just so I understand, because I feel like we have so much to decide in this case, but less so if you're conceding. So you are conceding this is an interpretive rule. And because it is only an interpretive rule, whether or not it is a final order under the Hobbs Act, so maybe you could still bring a pre-enforcement action, this rule does not bind the district court in this case. The district court is free to sort of assess the rule as though the Hobbs Act did not exist. That is your position. If the issue is not waived or forfeited, yes. Got it. Okay. So tell me how you get to Chevron deference under that scenario. Well, as Judge Thacker analyzed it in her dissent in the first case, it is subject to Chevron deference because the FCC has expressed statutory power to implement the Telephone Consumer Protection Act. And part of that power includes interpreting the statute's terms. It has long issued many interpretations of the TCPA over the years, and those are always according to Chevron deference. I think a lot has changed since that dissent. That dissent wasn't addressing an interpretive, what was viewed as an interpretive rule at the time. Well, I mean, Chevron has to do that. I mean, I still think Judge Thacker's dissent is correct, but under Skidmore deference. Sure, I understand. And, you know, one important aspect of the dissent in the initial appeal is the finding that the statute itself is ambiguous. And that's important in the Chevron analysis because that leads you to see what the agency, you know, with responsibility for administering the statute says about it. And I want to touch on PDR's argument. They say the statutory definition of advertisement unambiguously requires that you should read it as an advertisement is something that advertises the commercial availability or the commercial quality of something. And as we argued in our reply brief, that leads to a redundancy. Because the commercial quality just means the quality of being commercially available. It would be totally redundant to say commercial availability or commercial quality. The word quality in the statute, as the FCC read it in paragraph 52 of the 2006 order, refers to the qualities of the thing. In this case, that the PDR is trustworthy. It's new. It's improved. It will help you manage your digital workforce. Those are the qualities of the freegooder service that's being advertised. It's not that it has to be commercially available. That's too narrow an interpretation of the statutory term advertisement. Yes, Your Honor. Counsel, assuming now we're just looking at this regulation the way we ordinarily would, no Hobbs Act, under either, I guess, Chevron or Skidmore, although it seems like it would be Skidmore to me. But PDR's main argument seems to be that we shouldn't find this regulation either reasonable or persuasive under Skidmore because it doesn't explain why it treats faxes differently than phone calls. And considering what counts as an unsolicited advertisement, what's your response to that? Yeah. My response is the FCC has made this. Can you hear me, Your Honor? Okay. My screen just froze. The FCC has made clear several times that it treats faxes and telephone calls differently. They're governed by different parts of the statute, and there are different rulings and interpretations on those different provisions. We cited the FCC's amicus brief in the Palm Beach golf versus Sarah's case in the 11th Circuit. But maybe it's a little esoteric, but we TCPA practitioners are always careful to distinguish the TCPA call rules from the TCPA fax rules because they're completely, they're like different worlds. I mean, I do understand that, but here it's just the exact same two words, right? Unsolicited, now I can't remember what they are, unsolicited advertisement, I think? Correct. And I do understand that the larger regulatory apparatus looks different in those two contexts, but is it your position that both that those two words mean something different when applied to a telephone call than when applied to a fax, and that's just so obvious there would have been no need for the agency to address it in issuing this interpretive rule? It is possible for that same term to mean two different things with respect to calls and faxes, but I don't think you necessarily have to reach that conclusion here. In the 2003 ruling that PDR cites, the FCC was exempting certain calls from the auto dialer provision, so it had policy reasons for doing what it was doing that were motivating it. Similarly, it had policy reasons in the 2006 order because it realized that faxes offering free goods or services are so problematic and they're so often a pretext to either future advertising or part of an overall marketing campaign that they should be covered by the definition of advertisement. And I want to stress that doesn't necessarily make them unlawful. You can send unsolicited advertisements if you follow the rules in Section B1C. You send them to people with whom you have an established business relationship, you obtain the fax number in a permissible way, and you use a compliant opt-out. The district court said that we were advocating a blanket ban on faxes offering free goods or services, and that's not the case. You just have to follow the rules, and a sophisticated entity like PDR should be able to do that. Mr. Harris, one of the issues that came up during the initial round of litigation in our court was the question of how, because we had concluded that it was a legislative rule, we didn't really have any cause to determine whether or not the interpretation of the statute was reasonable. Now apparently we do, given that you can see that it's an interpretive group. And so the question is, what limit, if any, applies to the FCC's interpretation? So, for example, the question of charities and delivering facsimiles by charitable organizations, it would seem that literally the FCC's blanket ban on unsolicited advertisements would apply with equal force to that group of entities. Is that your view of it? Yeah, I believe under a per se rule that it doesn't matter if the sender is a charity or if the sender is a for-profit business. Now it's different under the majority's decision, the Second Circuit decision in Physicians' House versus Barringer. There, the fact that the defendant was a for-profit entity was important to the court's analysis. The Second Circuit there, the majority held, there's a rebuttable presumption at the pleading stage, that if the facts relates to the for-profit sender's business activities, that they're doing it for advertising purposes, that there's either further advertising at the free seminar or in the free publication in this case, or that it's just part of an overall marketing campaign. Excuse me, Mr. Harrod, do we need to even go there, I guess? I mean, I thought your theory of this case was that PDR, if not directly, at least indirectly, is engaged in commercial solicitation and advertisement because it hopes through the delivery of what is a free reference to have medical doctors and hospitals ultimately purchase and prescribe the drugs that are described in that reference. So isn't that the question, whether or not that SEC interpretive rule is applied to these facts, whether that's a reasonable fit in these circumstances? Yes, that is definitely part of it, because PDR has some relationship. We've had no discovery in this case, of course, but PDR is paid by the drug companies to distribute the Physician's Desk reference. I think we're entitled to know what the details of that arrangement are. Is it based upon the number of copies of the e-book that they distribute? There's also PDR made it clear that it sells all kinds of other health care products and services. The materials that PDR submitted in support of its motion to dismiss saw judicial notice of documents describing PDR's large business, but we don't understand all the details of it. I would like to see, before my client's case is dismissed for failure to state a claim with prejudice and without leave to amend even once, I think we're entitled to see the 2014 e-book. No one has ever seen it. The district court hasn't seen it, this court hasn't seen it, we haven't seen it. I was able to find the first couple of pages of the 2015 e-book the next year on the internet, but I couldn't access the whole thing, but it contains an advertisement for the PDR pharmacy discount card. We sought leave in the district court to amend the complaint to allege that the fax was a pretext to further advertising contained in the 2014 e-book, including the PDR pharmacy card or other services that PDR offers. The district court ignored us. It didn't rule on our request to amend, it just dismissed the case with prejudice. All right, Mr. Herr, you're over your time, but you've got some time saved for rebuttal, and we'll hear from Mr. Stern. Thank you. I'm sorry, Mr. Dean, I have audio, but my video is frozen. Is there anything I can do about that? You know what? Should I do that? My audio is working, and I can complete the argument this way. I'm hesitant to take a chance on it, but you can see me. We can see you, and more importantly, we can hear you as well, so it's fine. We'll stick with the status quo. Okay, thank you, Mr. Herr. Mr. Stern? Thank you, Your Honor. May it please the Court. If the Court's aware, the United States participated as amicus in the Supreme Court to urge the position, which is still our position, that there should be no review in a district court private party proceeding of a Hobbs Act order. No, at this point, the Supreme Court will… Oh, he's frozen. Mike? That position… Mr. Stern, can you hold on for a second? You froze up. We didn't catch… Of course. Mike, are you there? Oh, no, I used the link that we used when I… Up here. Okay. Okay. Your Honor, should I better reconnect?  Okay, I'm sorry about that. Oh, that's okay. We're working our way through this. It's entirely my fault. I apologize. Go ahead. At this point, what we're addressing are the Court's admonition that to decide the question of reviewability, it wanted to look at two considerations that had, in its view, not been fully addressed up to that point. And the point, I think, that we're trying to address in our brief as amicus is that while we continue to think that the position that we articulated in the Supreme Court is the correct one, that there are reasons, as the Supreme Court's decision suggests, why there might be a break point between interpretive rules that are not subject to the same notice and comment procedures as legislative rules, which don't get the same degree of deference and have a different legal impact. And with those points in mind and sort of taking that sort of as the assumption here, what we've indicated is that we agree with plaintiffs that this is an interpretive, not a legislative rule, and that unlike a legislative rule, it did not go through the same kinds of notice and comment procedures, so that while picking up that rule, it wasn't put on notice in the same way. As the Court's aware, when the FCC solicited comments on aspects of its rule in 2003, it didn't, in the way it would in a notice and comment procedure, lay out exactly what its concerns were. So where does that leave us then? The government has conceded that this is an interpretive rule that didn't go through the full notice and comment procedures. So was the district court required to follow it or not, based on the government's viewpoint? Well, again, if the position that we articulated in the Supreme Court were ultimately to be upheld by the Supreme Court, then the district court erred in undertaking review. However, what we understand the Supreme Court's decision to ascend... Wait, wait, wait. I don't still... I didn't hear an answer to my question. In the government's view, was the district court required to follow this interpretive rule or not? The answer is yes. Okay, why? That's for all the reasons that we articulated in the Supreme Court. Well, I can't sort out all of your reasons, because they seem to be saying two different things at different times in different courts. Well, I just want to make clear that what we've addressed here are not all of the questions that were presented to the Supreme Court. We understand this to be a... What the Supreme Court did was not to ask the question before it to be totally revisited. The court wanted to know a couple of things that it thought would be possibly crucial to its decision. It didn't indicate for sure, but it certainly sent that strong message. Okay, so what I would like to know is why the government is of the view that the district court is required to follow an interpretive rule? Just whatever your best argument is or best case something. Your Honor, I didn't really sort of come to fully deal with all of those issues which were dealt with in the Supreme Court, but basically it boils down to a sort of both a statutory language, talks about orders. It does not distinguish between legislative and interpretive rules. And several courts of appeals have found interpretive rules as well as legislative rules to preclude review in district court action. And there are historically very good reasons for all of this. But the point that we're trying to make on this limited remand is that the Supreme Court was apparently sending a strong message that perhaps a rule should differ when depending on whether it is legislative or whether it is interpretive and depending on the kind of notice that is given. And notice in this instance is very much linked just by the way to whether it is legislative or interpretive because a legislative rule must go through notice and comment, very elaborate procedures, which have always been thought to provide adequate notice to concern parties. So taking that cue from the Supreme Court, we've suggested that indeed you can, while we don't think that the court should make that distinction, we agree that that is one that can be made. We can understand why the Supreme Court might be thinking that that would be an appropriate platform. And that's one of the points we were trying to make in our brief. And in the other we're simply trying to sort of express our understanding that this regulation is interpretive and acknowledging did not go through the same kind of procedures as a notice and comment rule would. So that if the breakpoint is indeed that which the Supreme Court appeared to be suggesting, then the situation would be that, yes, a court could review it. And since it's an interpretive rule, it would be according, you know, Skidmore, you know, deference not Chevron deference. And so that's the sort of we're sort of making some a fairly modest point here. But we also think it's an extremely important point. Again, you know, I want to rehearse all the reasons that we think that the Hobbs Act, the problems that are created when Hobbs Act orders are subject to review in private party litigation. That answered my question, at least. Okay. Mr. Stern, you're up. I'm sorry, Your Honor, if I'm over my time, I apologize. Thank you very much. That was my fault. No, that's fine. Thank you, Mr. Stern. All right. We'll hear from the affilee, Mr. Okowo. I'm sorry if I didn't pronounce that correctly, but you'll correct me, please. No, that was actually perfect. And you're just about the only person who's ever pronounced my name correctly the first time. Thank you for that, Your Honor. Yes, sir. I am a little surprised that the government is having difficulty answering these basic administrative law questions that the Supreme Court held in Patterson v. Marshall. Yes, Jotaris. Well, I think part of the problem for the government and for us is that the case we are seeing today bears no familiarity at all, no resemblance at all to the first case we saw. And the government is right. Like, in order to fill out what's going on, we actually have to read Supreme Court briefs that make arguments that we have never seen before. And so I guess, I mean, I think that's why the government is having trouble. It's got a merits brief in the Supreme Court that is responsive to arguments that were never even hinted at when this case was before us. And to fully understand the government's position, we have to go back and read that brief, too, which is full of stuff we've never looked at before. And so, I mean, I'm just finding this sort of frustrating. On appeal, you said expressly the Hobbs Act would bar a challenge to the validity of the 2006 rule in this proceeding. Now you're taking the opposite position with a bunch of arguments that we have never seen before. Why is this okay? We don't usually let people take inconsistent positions in the same case and bring an entirely new case on a second appeal. So how come this is all right? It's very difficult. A couple of things. One, we always took the position that the district court was correct, did not err in reasoning that it was not bound by the FCC's rule, that it could look to the statute rather than the FCC's explanation. In fact, going back to the argument that Mr. Rosenthal presented last time, Judge Harris, you asked him a series of questions about, well, is your argument only about the possibility that the rule could be harmonized with the statute? Or are you also arguing that the district court could look to the statute? And he clarified, just as we said at page 14 of our appellee brief then, we're taking the position that the district court was entitled to look to the statute, ask what the statute means. So yes, there was some back and forth about the validity. Our position today continues to be that the district court does not act on the validity of what an agency does, even in a legislative rule context, when it simply acts on a private party dispute. Because it doesn't issue. So you're saying your positions have been consistent all along. That's your argument? My position is I think our brief could have been way clearer. But ultimately, we took the position that the district court was entitled to look straight to the statute. Then you also have the mandate rule issue that Judge Diaz raised. The Supreme Court said, please look at this interpretive rule, legislative rule issue. Please look at the 703 issue, whether they had a prior adequate opportunity to review it, as well as any other issues that may arise. So I think the direction, frankly, is to look at these two issues and not come back to the Hobbs Act preclusion question. Yes, Your Honor. So I really have been wrestling this, and I just want to make sure. So your ultimate position is waived or not, forfeited or not. The Supreme Court said to do this, so do it. It's a totally legit position. I just want to make sure. Yes, it's mandate rule, but it's also that these questions go to subject matter jurisdiction. And so that's exactly how the court understood it. We're talking about a statute that talks about exclusive jurisdiction and then the implicit preclusion because of effect. I know. I'm sorry. I will get off this in a minute. I think that's not quite right. I mean, the district court has jurisdiction over this action. There's no question about that. The question is whether PDR waived a defense. Don't apply this rule because it's inconsistent with the statute, over which the district court might or might not have jurisdiction. But we wouldn't have to reach that if we thought defendant didn't raise that defense in the right place. But I think the question on review is whether the district court exceeded its jurisdiction by considering the question of what the statute means. We wanted to address that question. But I'm saying we might not have. If the entire issue has been waived, ordinarily and apart from the mandate, we just wouldn't reach that question. And so that comes back to where I started. What we said in our appellee brief is the district court did not err when it looks to the statute to decide what the controlling rule is. So that's been in the case all along. The language about the validity and such, I think that there's been a lot of back and forth about exactly what that means. But we absolutely raised the question and defended the district court's judgment on the ground that the district court had the authority, notwithstanding the Hobbs Act, to ask what the statute means. As to whether an interpretive rule is binding, Batterton v. Marshall, Perez v. Mortgage Bankers, made clear that an interpretive rule is not binding on a court, it's not binding on an agency, and it's not binding on private parties. So I think that is actually quite straightforward. And as to Chevron, the Supreme Court's decision. I'm sorry. I know there's all that case law saying an interpretive rule is not binding. But that all arises under the APA. You know, under the APA, do we treat it as binding or not, or do we give it Chevron deference or not? But I feel like the hard question in this case is we also have a statute, a statutory mandate under the Hobbs Act. And so I don't think it's enough to say that absent the Hobbs Act, this rule would not be given binding effect. I totally agree. Wouldn't get Chevron deference. It wouldn't be binding just under the APA by itself. That's not how we would treat it. But the question is what difference it makes that Congress has passed this other statute saying that for some agencies, any final order is going to be treated as binding by the district court. Right. And what the Supreme Court has said is that it is the APA that defines what force and effect is given to an agency action. And the Hobbs Act defines the mode of review. And so I think when, again, coming back to did it bind the district court, the APA is answering the question. The other way to look at it is the Hobbs Act is providing a way for people to go and bring lawsuits against the United States government. Why would you bring a lawsuit against the United States government? Because they said something that maybe you think is wrong, but doesn't affect your legal rights and interests. Doesn't control your conduct or anyone else's. And may not be refined in any way. You have the rightness and justiciability and standing issues that all come into play. Because of that basic question of why go sue now over something that doesn't even bind the agency. The agency can the next day take an inconsistent position so long as it explains it. So there's really no reason for people to go running to the courthouse over non-binding statements of, you know, here's what the agency thinks. I think part of what the government is concerned about is that there are heavily regulated entity settings where everyone in the room is reading the Federal Register every single day. They're watching like a hawk everything that the agency does. Yes, Judge, yes. So in the amicus brief that was filed, I recall a footnote that indicated litigation with similar issues raised in a different case. And I get the point that you're making that in the abstract perhaps the order wasn't right. It wasn't appropriate for you to challenge it when it was first being addressed by the FCC. But at the point that your client was sued, wouldn't it have been appropriate at that point to seek an interpretation from the FCC as to whether or not your client's actions were governed by the rule? We could have done that. We could have gone and opened another front in essentially a side litigation. But the question here is whether our decision not to do that had the effect of stripping the district court of jurisdiction to ask the question of what the statute means. And the answer to that is no. That kind of brings us into the 703 territory as principally where we discussed this point. But what Section 703 says is we're preserving judicial review and civil and criminal enforcement actions unless it's in a prior adequate and exclusive opportunity and an opportunity arising after. You think it's an either-or proposition? If they're not mutually exclusive, the opportunity to litigate in front of the FCC and or the district court? They're not mutually exclusive, Your Honor. What the Hobbs Act makes exclusive is the opportunity to seek pre-enforcement review. Once there's an enforcement action, Functional Music says this and every Court of Appeals to consider the question has said once there's an enforcement action, then the opportunity to do that and defend oneself in the enforcement action by re-raising the statutory question re-arises. And so we're just asking for an application of that principle which no one disputes applies if the government brings the enforcement action to the private enforcement action setting. If I may turn to the merits. I'm sorry, can I just ask just a clarifying question when you said no. Are there Courts of Appeals that have held that the Hobbs Act doesn't apply to interpretive rules? Is that what you're saying, that's well understood out there? What's well understood is that legislative, interpretive, otherwise. When a government agency, including a Hobbs Act agency, brings an enforcement action against a private party, the private party can defend itself. But in the context of private actions like this one, are there any Court of Appeals cases saying that the Hobbs Act would not apply to an interpretive rule? That under the Hobbs Act, the District Court would not be bound to follow the interpretive rule? I'm just trying to be clear, we would be the first Court of Appeals to say that, right? I think only one Court of Appeals has squared up to this question. So we would be the first Court of Appeals to say that? We would be the first Court of Appeals to apply the administrative rule standard that an interpretive rule isn't binding in the Hobbs Act context. Seriously, this is just a yes or no question. I want to make sure I haven't missed any cases. There are no Court of Appeals cases doing that, right? I'm not aware of any Court of Appeals case that asks the Hobbs Act question specifically and says not binding. If I may turn to the merits. Judge Diaz, you asked a question that I think is absolutely pivotal. And that is whether plaintiff's proposed construction would apply to charities and non-profits by saying that commercial doesn't apply to quality. And the answer is yes, it would apply. The Supreme Court's decision in Clark v. Martinez makes clear that when a court interprets a unitary statutory phrase it gives it meaning. That that meaning necessarily applies in all of the contexts to which that phrase applies. And the FCC has said, and said right in its 2006 order in paragraph 43, the statute gives us no ability to distinguish between for-profits and non-profits in the facts context. And actually that's important. Not only could the agency not fix it, but Congress, I don't think, could have said for-profits get one rule, non-profits get another rule. Under the Supreme Court's recent decision affirming this Court's decision in Barr v. American Association of Political Consultants Congress's decision to say actually people who are collecting government debt aren't subject to the TCPA was struck down under the First Amendment because it created a speaker-based constraint on speech and distinguishes between different kinds of people saying the same kind of thing. And that very constitutional problem would arise. The other problem that would arise is that the Court would then be addressing would be having the constraint run to non-commercial speech. So you have a whole welter of policy problems. Yes, Judge Diaz. Just so I understand your line of argument here, are you saying that the statute itself is problematic because it might implicate charitable entities as an example or that the statute as interpreted by the FCC is problematic because it sweeps up these larger groups of entities that Congress could not have intended to be implicated by the Act? I'm saying a treatment of the statute focusing first on plaintiff's construction. I think the plaintiff's and the government's constructions are somewhat different. Plaintiff's proposed construction is that the statute should be read to mean that unsolicited advertisement means material advertising the commercial availability or quality but quality not modified by commercial. So if it either advertises the commercial availability and as to commercial availability plaintiff's counsel agrees with us that that means the commercial exchange involving the purchase or sale of property, goods or services. That's in the supplemental reply. He says, but commercial doesn't modify quality such that material advertising the quality regardless of any commercial connection would be an unsolicited advertisement. I'm saying that construction which takes out the commercial nexus 100% would run to non-profit entities. Although I'm not sure why, I think I asked Mr. Harrod this I'm not sure why he has to go that far because it would seem of course he's indicating that he still doesn't understand the full scope of your client's activities but if in fact, at a minimum the PDR references, even if free is intended to entice or encourage doctors hospitals, medical professionals to obtain, purchase and then prescribe drugs to third parties, i.e. consumers why wouldn't an FCC regulation that bars that kind of activity fall well within the ambit of the statute? So I think here it's important to focus on what was pleaded and what was not pleaded. What was pleaded was that the fax itself offering a free copy of a 60-page I get that, but why wouldn't an easy fix be as Mr. Harrod suggested, that he be allowed an opportunity to amend the complaint to plead now this new theory of liability? No, Your Honor, because he never moved for leave to amend. I know that he asked for leave to amend in a motion, right, in his response to but if I'm remembering right I think this is a long time ago but I thought that your client moved for judicial notice of certain facts also in a motion, I'm sorry, also in a brief and not in a separate motion and the district court granted that, right? My client made a separate motion its docket entry 20 on the district court for judicial notice of the one page printout of the website so it's absolutely clear that we made the motion and it's clear the scope of what the district court granted. But isn't our law pretty clear that if you state with particularity how you want to amend your pleadings whatever you have captioned that document the district court is at least supposed to rule on it? No, Your Honor, ACA versus financial guarantee from this court just last year in 2019 involved a case where a party had made six separate requests in briefs to make an amendment to their pleading and what the court said was that the parties asking that came up on appeal and said actually we should have gotten a chance to leave they conceded this court itself over and over again that a district court and I'm quoting here, this is 917 F3rd 206 at page 218, they concede that this court has held that a district court does not abuse its discretion by denying contingent requests to amend in the legal memoranda made in lieu of a motion to amend. They argue however that this court should follow other circuits which according to their interpretation find that requests made in opposition memoranda constitute a proper motion to amend. We declined to do so and the court was echoing a whole line of cases going back at least 10 years in this court that have made clear that a motion to amend is an optional and a district court that declines to grant, declines to address a motion that's not properly made as a motion that doesn't set out here's our amended complaint the district court does not abuse its discretion so I think Mr. Herr is right in his supplemental reply in saying the question is the district court abuses its discretion but he's wrong about the answer because this court's precedence made clear no motion, no abusive discretion. So the only theory that's on the table in this case was the theory that the facts itself because there are essentially no other facts pleaded no other factual allegations pleaded in the complaint the facts itself was the advertisement there's no pretext theory and in fact the plaintiff's opposition brief to the motion to dismiss at page 11 says I did not plead an overall marketing campaign theory and his original appellant's brief to this court I did not plead an overall marketing campaign theory he said I ought to get a chance to plead that theory but again the court's precedence made clear that that's not correct the district court did not abuse its discretion in denying that opportunity. And so really the only question is whether an offer of again societally useful information of a technical nature coming back to the exhibit that was attached to the complaint the same trusted FDA full prescribing information whether a compendium of that the 68th edition of it offered in a new convenient digital format whether that is an advertisement and the answer is the district court held and as so many other courts across the country have held is no and one place that I'd like the court to focus is Judge Meda's decision and the drug reform coordination decision of the district of DC where he addressed a kind of similar setting there was a free fax offering inclusion at no cost in a directory and Judge Meda said relying on this very same FCC materials that we provided in our 28J last week he looked at those applying the 2006 rule and said if it's just a fax that just offers something for free not an advertisement. What happened in that case that led to the motion to dismiss being denied was that there was a pleading that there were subsequent communications there were offers of sales and Judge Meda said take those together. I thought free fax not an advertisement but quickly followed on as the allegation is by offers to sell materials then you have an advertisement. I think the court can accept that theory but say look it's not nothing more than the first fax free is pleaded here and that's not an advertisement because it doesn't promote a commercial exchange. Yes Judge, yes. You're a little bit over your time counsel so I need you to wrap it up so that we can allow Mr. Harris some time for rebuttal. Sure, I'm happy to rest unless the court has any further questions. Any of my colleagues have further questions? Thank you very much. Mr. Harris you've got some time for rebuttal. Go ahead. Thank you Judge Diaz. On the question of requesting a leave to amend the complaint in the response to the motion to dismiss. We cited a recent case from this court at page 21 through 22 of our reply brief. Matrix Capital Management versus Bearing Point. The court there held that a quote outright refusal to grant leave to amend requested in a response to the motion to dismiss without stating quote any justifying reason was an abuse of discretion. And that's exactly what the district did here. Just ignored our request to allege a pretext theory. I'd like to address the functional music case. This keeps coming up in this case. It's a DC circuit case. Council for PDR cites it for the proposition that when the agency brings an enforcement action against a defendant they can challenge the validity of the agency's interpretation. But that's not what happened in that case at all. What happened in functional music was years after an interpretation, an order was issued the defendant brought a petition to deem that interpretation invalid. Long after the Hobbs Act 60 day window for a direct appeal. I mean years later, seven years later, something like that. And it went up to the DC circuit. The petition was denied. The FCC said the order was okay. Went up to the DC circuit and the DC circuit said you can bring this Hobbs Act challenge years after the 60 day jurisdictional window has closed because what you're challenging is the agency's statutory authority to issue this rule. And therefore you're challenging its ultra-variance. And so you can bring that at any time. You can always argue that the agency lacked authority to issue a rule. Similarly here on the prior adequate exclusive opportunity question PDR could have participated in the rulemaking in 2006 obviously. Fine. It's unfair to hold them to that. They could have petitioned at the most relevant time would have been before they sent the faxes at issue in this case. Right? Before you send thousands, God knows how many thousands of faxes you hire a lawyer and they say, you know what? There are laws about sending faxes in the United States. Let's look into this. You would find the 2006 order. Any lawyer would find the 2006 order. And when that lawyer reads paragraph 52 that says offers of free goods or services, especially free publications are advertisements. What's that lawyer going to do? They're going to say either don't do what you're contemplating doing or go petition the FCC to clarify this rule or rescind it if you think it's wrong. What you do not do is go ahead and send your advertisements without doing anything about it. PDR only focuses on 2006 and they argue that that's the relevant time period. But they could have petitioned under functional music. They could have petitioned the FCC at any time before it sent its faxes and before it got into trouble. It just was careless. It just didn't do what it was Your colleague says that it's not it's not one, it's an either or proposition. Having failed to do one, does it mean that you are then barred from actually litigating the issue in district court? I understand that. It's just on that limited was there a prior adequate exclusive opportunity?  I'm trying to make. Let's see. The drug reform case, of course, the motion to dismiss was denied. We cite numerous cases where the motion to dismiss was denied at the pleading stage. This court's initial decision was correct. The FCC's 2006 rule is a per se rule. The only other court of appeals to have decided a free goods or services fax in a TCPA action is Physicians Househorse v. Behringer. This court cited with Judge LaValle's concurring opinion that it's a per se rule. The majority found that it's a rebuttable presumption at the pleading stage. Our alternative argument that we've raised in our briefs and our fallback is if all else fails, the court should join the majority in Physicians Househorse v. Behringer. That would be another way to resolve the case. Another easy way to resolve it would be to reverse the district court's denial of our motion to amend as an abuse of discretion and remand on that. But in any case, the district court's dismissal of this case for failure to state a claim should be reversed. Thank you. Thank you. Judge Thacker, Judge Harris, do you have any additional questions? No. Thank you, Mr. Harris. I want to thank counsel for their arguments here this morning. The case has been submitted and the court will stand in recess awaiting the second case. Typically we would come down from the bench and greet you personally, but obviously in this age of COVID that is not possible. Please know that we're very pleased that you were able to join us today and thank you again because we would not be able to do the work that we do without the able assistance of lawyers such as yourselves. So again, on behalf of the court and my colleagues, thank you very much. The court stands in recess. The court will take a brief recess.
judges: Albert Diaz, Stephanie D. Thacker, Pamela A. Harris